# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

GREGORY SEWELL                                   CASE NO. 2:19-CV-00698

VERSUS                                           JUDGE TERRY A. DOUGHTY

WAITR HOLDINGS, INC.                             MAG. JUDGE KATHLEEN KAY

## RULING

Pending before the Court is Defendant Waitr Holdings, Inc.'s ("Waitr") Motion to Compel Arbitration and Dismiss Complaint [Doc. No. 7]. Plaintiff Gregory Sewell ("Sewell") filed an opposition memorandum. [Doc. No. 9]. Waitr filed a reply memorandum. [Doc. No. 13].

For the following reasons, the Motion to Compel Arbitration and Dismiss Complaint is GRANTED IN PART AND DENIED IN PART.

## I.      FACTS AND PROCEDURAL HISTORY

Waitr is a Louisiana-based technology company that operates an online food order and delivery platform that allows its patrons to use mobile or desktop applications to order food and have it delivered from participating restaurants.

On April 13, 2017, Waitr hired Sewell as a City Manager. In connection with and in consideration for his employment, Sewell signed an offer letter. That offer letter contained the following provision:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator

who shall issue a written opinion and (iv) the arbitration  shall provide for adequate discovery.

[Doc. No. 7-3, Declaration of Amy Behne ("Behne Declaration"), Exh. 2, ¶ 5 & Tab A].

On February 27, 2018, Waitr promoted Sewell to Business Manager of Excellence. Sewell received a second offer letter regarding this position that did not include any arbitration terms.  [Doc. No 7-3, Behne Declaration, Exh. 2, ¶ 6, Tab B].  Sewell signed that letter on March 3, 2018.

On November 16, 2018, Waiter distributed an Agreement to Arbitrate Claims. This agreement was emailed through his @waitrapp.com email address.[1]  The Agreement to Arbitrate Claims was also communicated through a public group chat channel ("Discord") and an internal messaging platform ("Slack").  [Doc. No. 9, Exh. C., Affidavit of Chad Murray, ¶¶ 16 & 17]. That Agreement provides as follows:

> In consideration of the at-will employment relationship between Waitr, Inc. and/or Waitr Holdings, Inc. ("Employer") and Employee and the mutual desire of the parties to enter into this Agreement to Arbitrate Claims ("Agreement"), the  parties hereby agree that any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to  this  Agreement,  the  employment relationship between the parties, or  the  formation or termination of the employment relationship, or which arise after the  termination  of  the  employment  relationship,  which  are  not  resolved by their mutual agreement shall  be  resolved  by  final  and  binding  arbitration by  a  neutral arbitrator.
>
> . . .
>
> The claims covered by this Agreement include, but are not limited to, claims for  . . .  violation of any local, state, or federal constitution, statute, law, ordinance or regulation . . .   wages, overtime, premiums, gratuities, tips, service/administrative charges, or any other compensation due; penalties . . . .

---

[1]Sewell describes the email as a "mass email to 'everyone@waitrapp.com,'" but does not deny that he received the email at his @waitapp.com address.

[Doc. No. 7-3, Behne Declaration, Exh. 2, ¶ 7 & Tab B].

The Agreement to Arbitrate Claims further provides:

**I ACKNOWLEDGE THAT I HAVE HAD AN OPPORTUNITY TO REVIEW AND ASK QUESTIONS CONCERNING THIS AGREEMENT AS A CONDITION OF EMPLOYMENT. I UNDERSTAND THAT I AM PERMITTED TO TAKE THIS AGREEMENT WITH ME AND REVIEW IT WITH AN ATTORNEY OF MY CHOICE IF I SO DESIRE. I FURTHER UNDERSTAND THAT BY CONTINUING TO WORK FOR COMPANY, MY CONTINUED EMPLOYMENT WILL BE CONSIDERED ACCEPTANCE OF THE AGREEMENT, EVEN WITHOUT SIGNATURE.**

*Id.* (emphasis in original). The Agreement to Arbitrate Claims expressly applies only to disputes that otherwise would be resolved in a court of law; it does not extend to claims or matters that may be brought before an administrative agency or purport to limit the employee's rights before administrative agencies. *Id.*

Pursuant to the Agreement to Arbitrate Claims, arbitration proceedings are to be held within geographic proximity to the employee; the arbitrator is to be selected by mutual agreement of the parties; and Waitr agrees to pay the arbitrator's and arbitration fees. *Id.* The Agreement to Arbitrate Claims provides for the same rights to conduct discovery, bring dispositive motions, and submit evidence and call witnesses that the parties would enjoy in a court of law. *Id.*

Sewell did not sign the Agreement to Arbitrate Claims, but does not deny that he received it. (In fact, he forwarded the e-mail to a former Waitr employee, Chad Murray, on December 19, 2018). [Doc. No. 7-3, Behne Declaration, ¶ 7]. Sewell never made any objection to or refused any of the terms in the original offer letter or the Agreement to Arbitrate Claims.

On April 1, 2019, Waitr terminated Sewell's employment, contending that he had a series of performance issues and had failed to satisfy the requirements of his performance improvement

plan ("PIP"). Sewell denies that he was terminated for performance issues and instead contends

that he was harassed and his employment ultimately terminated because he made complaints

about violations of the Fair Labor Standards Act., 29 U.S.C. §§ 201-219 ("FLSA").

On May 31, 2019, Sewell filed his Complaint in this Court, bringing suit under the

FLSA and state law. [Doc. No. 1].

On June 28, 2019, Sewell filed a second lawsuit in the Fifteenth Judicial District Court,

Lafayette Parish, Louisiana, seeking unpaid wages, penalties, and attorneys' fees under the

Louisiana Wage Payment Act, LA REV. STAT. §§ 23:631-632. *See Gregory Sewell v. Waitr

Holdings, Inc.*, Case No. 2019-3964, 15th Judicial District Court, Parish of Lafayette, State of

Louisiana. Waitr filed an Exception of Prematurity, and, on August 12, 2019, the state court

sustained the objection and required Sewell to pursue his claims in arbitration. The state court

action was dismissed.

On September 13, 2019, Waitr filed the instant motion. The motion is now fully briefed,

and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

The Federal Arbitration Act, 9 U.S.C. §§ 1*, et seq*. ("FAA"), is the substantive law

controlling the validity and enforcement of arbitration agreements. *Walton v. Rose Mobile

Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002). The FAA provides that written agreements to

settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also

Walton*, 298 F.3d at 473. Additionally, "[a] party aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate under a written agreement for arbitration may petition any United

States district court . . . for an order directing that such arbitration proceed in the manner

provided for in such agreement." 9 U.S.C. § 4.  However, the FAA also has a "saving clause

[that] allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law

or in equity for the revocation of any contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622

(2018) (quoting § 2).  "The clause 'permits agreements to arbitrate to be invalidated by

'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.*

(quoting *ATT Mobility, LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011)).

Courts consider two factors in ruling on a motion to compel arbitration: "(1) whether a

valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question

falls within the scope of that arbitration agreement." *Painewebber Inc. v. Chase Manhattan*

*Private Bank (Switz.),* 260 F.3d 453, 462 (5th Cir. 2001) (internal quotation marks and citation

omitted); *see also Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014) (quoting *Sherer*

*v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008).  "[T]here is a strong

presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement

bears the burden of establishing its invalidity."  *Carter v. Countrywide Credit Indus*., 362 F.3d

294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/ Johnson Lane Corp*., 500 U.S. 20, 26

(1991)); *see also* 9 U.S.C. § 4.

## A.  Was There an Agreement to Arbitrate?

"The first step of the analysis—the validity of an agreement—is governed by state law

contract principles."  *Sharpe*, 769 F.3d at 914 (citing *Klein v. Nabors Drilling USA L.P.*, 710

F.3d 234, 236 (5th Cir. 2013)). Under Louisiana law, parties may reciprocally bind themselves to

arbitration agreements. LA CIV. CODE ANN. ARTS. 3099–3100 (2015). Such agreements are

"valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." LA. STAT. ANN. § 9:4201 (2009).

It is undisputed that Sewell signed the April 13, 2017 offer letter containing an arbitration agreement; that Sewell received the Agreement to Arbitrate Claims which was sent via email on or about November 16, 2018; that Sewell continued his employment after receipt of the Agreement to Arbitrate; and that Sewell failed to raise any objections to the Agreement to Arbitrate or to the arbitration provisions in the original offer letter prior to filing this lawsuit.

However, Sewell contends that the Court should not compel arbitration because the original offer letter was superseded by the February 27, 2018 promotion letter, which did not contain arbitration provisions. Additionally, Sewell argues that the November 2018 Agreement to Arbitrate Claims did not create an enforceable arbitration agreement because he did not expressly accept the Agreement to Arbitrate Claims, and tacit acceptance should not be inferred. Finally, Sewell contends that the Agreement to Arbitrate Claims is void as against public policy because it is designed to "prevent or obstruct the assertion of valid wage claims in a pending or threatened FLSA collective action for the Driver wage violations." [Doc. No. 9, p. 2].

The Court rejects each of these arguments. The Court considers both the offer letter and the Agreement to Arbitrate Claims.

### 1. April 13, 2017 and February 27, 2018 Offer Letters

First, the Court finds that Sewell entered into an arbitration agreement with Waitr on the basis of the April 13, 2017 offer letter. There is simply no dispute that Sewell received the offer letter containing the arbitration provision, that he reviewed that letter, and that he signed that letter, making it a term of his employment. The parties had capacity to contract; there was mutual consent; there was an object (the terms of employment, including arbitration of related disputes); and there was a lawful purpose. *See* LA. CIV. CODE ARTS. 1918, 1927, 1966, and 1971. Therefore, under Louisiana law, there was a valid, enforceable contract.

However, Sewell argues that, even if there was a contact, his later promotion letter, which did not contain arbitration provisions, superseded the original letter. Therefore, any arbitration agreement based on the original offer letter is no longer in effect.

The Court agrees. The promotion letter was almost identical to the original offer letter in form. As with the original offer, Sewell signed under the statement "I accept the terms and conditions set forth in this offer letter." [Doc. No. 7-3, Behne Declaration, ¶ 6 & Tab B]. Therefore, the parties entered a new valid, enforceable contract. Unlike the original offer letter, however, the promotion offer letter did not contain arbitration provisions, and the Court cannot find as a matter of law, based on the record before it, that the parties intended to continue the arbitration provisions from the previous contract. Accordingly, to the extent that Waitr moves to compel arbitration on the basis of the April 13, 2017 offer letter, the motion is DENIED.[2]

### 2. The November 16, 2018 Agreement to Arbitrate Claims

While the Court has denied enforcement of the arbitration provisions based on the April 2017 offer letter, Waitr also contends that arbitration is required under the November 16, 2018 Agreement to Arbitrate Claim. The Court agrees with this contention and finds that the Agreement to Arbitrate Claims is a valid, enforceable contract.

Sewell has never denied that he received the email and attachments, that he continued his employment with Waitr after receipt, and that he raised no objections to Waitr about its terms. Under Louisiana law, Sewell's continued employment is sufficient to constitute acceptance of the Agreement to Arbitrate Claims.

---

[2] The parties argue whether this Court should give persuasive effect to the decision of the district court judge sustaining Waitr's dilatory exception compelling arbitration of Sewell's wage payment claims and dismissing the state court case without prejudice. However, the Court is presented only with a one-page judgment which does not contain any analysis or citations. Therefore, the Court has no basis to review or consider Judge Earles' decision.

In the case of *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532–33 (5th Cir. 2005), the Fifth

Circuit enforced an arbitration agreement against a former employee who had received the

agreement, but had not accepted the agreement in writing. The *Marino* Court explained:

> . . . Louisiana state courts recognize that contract law does not require written
> acceptance of an arbitration agreement. For example, in *Hurley v. Fox*, the
> Louisiana Court of Appeal held that the Louisiana state arbitration law—which
> tracks the language of the FAA and, like the FAA, requires arbitration agreements
> to be in writing—"does not require that the written agreement to arbitrate be
> signed by the parties." 520 So.2d 467, 467 (La. Ct. App. 4 Cir. 2/10/88) (citing
> *Cook v. AAA Worldwide Travel Agency*, 352 So.2d 243 (La. Ct. App. 4 Cir.
> 9/8/77), rev'd on other grounds, 360 So.2d 839 (La.1978)). The court found it
> "necessary ... to distinguish between the requirement that an agreement be in
> writing and the requirement that an agreement be signed. An agreement may be
> written and the consent thereto may be made orally or by the action or inaction of
> the parties, thus no signing of the writing is required." *Id.* at 469 (emphasis
> added). *See also Alford v. Johnson Rice & Co.*, LLC, 773 So.2d 255, 258 (La.
> App. 4 Cir. 11/15/00) (concluding that an arbitration agreement governed by the
> FAA does not have to be signed); *In re Succession of Taravella,* 734 So.2d 149,
> 151 (La. App. 5 Cir. 4/27/99) ("When an agreement [to arbitrate] lacks a
> signature, the actions and the conduct of the party or parties, who did not sign,
> may show the effect or validity of the agreement.").

413 F.3d at 532-33. The Fifth Circuit acknowledged that "Comment (b) to Article 1927 . . . .

'reflects the view of the Louisiana jurisprudence that when special formalities are prescribed for

a contract the same formalities are required for an offer or acceptance intended to form that

contract.'" *Id*. (quoting La. Civ. Code art. 1927, cmt. (b)). The Fifth Circuit then pointed out

that "[t]he plain language of Article 1927, however, permits offer and acceptance to be made

orally, in writing, or by action or inaction unless the law or the offer itself prescribes certain

formalities for the offer and acceptance of a specific contract." *Id.* The Court therefore applied

the plain language of the statute.

While Sewell attempts to distinguish *Marino*, the only factual difference is that Marino

signed a written acknowledgement of receipt. That fact is a distinction without a difference

when it is undisputed that Sewell, too, received the Agreement to Arbitrate Claims. He

continued his employment and did so without raising any objection to the Agreement to Arbitrate

Claims.  The agreement is enforceable.[3]

Finally, the Court rejects Sewell's arguments that the Agreement to Arbitrate Claims

should not be enforced as a contract of adhesion or as against public policy.  Sewell argues that

"those seeking on demand employment in so called 'gig economy' jobs have no real choice in

the matter" and that "sub-minimum wage workers" are "victimized by unfair and oppressive

wage practices."  [Doc. No. 9, p. 12].  However, the Court need not consider whether such

arguments might support a contract of adhesion to these type of workers.  Sewell was not a sub-

minimum wage worker.  As a City Manager, he received an annual salary of $60,000, and, after

his promotion, his salary was increased to $75,000.  Therefore, arguments that he had no

bargaining power carry little weight.  Louisiana is an employment at will state, and Sewell was

free to terminate his employment with Waitr and seek employment conditions that he found

more favorable.  *See Stadtlander v. Ryan's Family Steakhouses, Inc.,* 34,384 (La. App. 2 Cir.

4/4/01), 794 So. 2d 881, 890, writ denied, 2001-1327 (La. 6/22/01), 794 So. 2d 790 (citing

*Rogers v. Brown*, 986 F. Supp. 354, 359 (M.D. La. 1997); *Welch v. A.G. Edwards & Sons, Inc.*,

95–2085, 95–2086 (La. App. 4th Cir. 5/15/96), 677 So.2d 520.) (. . . "we conclude that the

worker, who could have found a similar position elsewhere, could have avoided the arbitration

agreement had she objected to it by simply choosing to work elsewhere.").  As the Louisiana

Supreme Court has stated, "the real issue in a contract of adhesion analysis is not the standard

form of the contract, but rather whether a party truly consented to all the printed terms."

---

[3] The parties also cite to *Danove v. Davila*, No. 11-3173, 2012 WL 6554073 (E.D. La. 12/14/12).  Waitr
contends that it supports the Motion to Compel Arbitration; Sewell contends that it is factually distinguishable.
*Danove* relies on and cites to *Marino*  and, in this way, supports Waitr's motion.  However, in that case, Danove
affirmatively claimed that her signature had been forged on the dispute resolution policy and acknowledgment of
receipt.  There is no such claim here.  Sewell does not deny receiving the Agreement to Arbitrate Claims; he claims
only that he did not sign it.  He certainly does not claim that the company actively forged his signature.

*Aguillard v. Auction Mgmt. Co*., 908 So. 2d 1, 10 (2005).   In this case, the Court has found that

Sewell did consent, and the provisions were clear—often in all capital letters and in boldface

font.   Under these circumstances, the Agreement to Arbitrate Claims was not a contract of

adhesion.

Additionally, the Court finds that enforcement of the Agreement to Arbitrate Claims is

not against public policy.   Indeed, federal policy favors arbitration, and Sewell's arguments do

not support a finding of non-arbitrability.

Having determined that Sewell entered into arbitration agreements with Waitr under the

November 16, 2018 Agreement to Arbitrate Claims, the Court reviews the inclusion of Sewell's

FLSA and state law claims.

## B.  Are Sewell's FLSA Claims within the Scope of the Agreements

Although there is some overlap, the Court now turns to the second part of the analysis:

whether Sewell's FLSA harassment and retaliation claims and related state law claims are within

the scope of the November 16, 2018 Agreement to Arbitrate Claims.   The Court finds that they

are.

As discussed above, the Agreement to Arbitrate Claims provides that "the parties hereby

agree that any and all disputes, claims or controversies between the parties, including but not

limited to any dispute arising out of or relating to  this  Agreement,  the  employment

relationship between  the  parties,  or  the  formation or termination of the employment

relationship, or which arise after the  termination  of  the  employment  relationship,  which  are

not  resolved  by  their  mutual  agreement  shall  be  resolved  by  final  and  binding  arbitration

by  a  neutral arbitrator." [Doc. No. 7-3, Behne Declaration, Exh. 2, ¶ 7 & Tab C].  The claims

listed as "covered by this Agreement include, but are not limited to, claims for  . . .  violation of

any local, state, or federal . . . law, ordinance or regulation . . . [pertaining to] wages, overtime, premiums, gratuities, tips, service/administrative charges, or any other compensation due; penalties . . . ." *Id.* Thus, the Court finds that Sewell's claims are within the scope of the November 18, 2018 Agreement to Arbitrate Claims.

### C. Administrative Closure

Where a court finds that all, rather than some or part, of a plaintiff's claims are subject to arbitration, Waitr contends that the claims should be dismissed with prejudice, rather than stayed pending arbitration. *See Ruiz v. Donahoe*, 784 F.3d 247, 250 n.3 (5th Cir. 2015); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, as a sister court has pointed out, the precedent is not that clear. *See Hanberry v. First Premier Bank*, Civil Action No. 19-10235, 2019 WL 4415267 at *7 (E.D. La. 9/16/19). Rather, the Fifth Circuit later clarified *Alford* in *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307 (5th Cir. 2003), stating: "*Alford* merely held that dismissal was not an abuse of discretion," but that it "did not hold that dismissal was required." *Id.* at 310-11; *Hanberry*, 2019 WL 4415267 at *7 (quoting same).

In this case, the Court finds that a third option is appropriate: administrative closure. Under 9 U.S.C. § 3,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

(emphasis added). The Court may be called upon to consider a conflict of law or to enforce, confirm, modify or vacate the arbitrator's award. In light of all these considerations, the Court

finds that administrative closure is appropriate, removing this case from the Court's active

docket, but providing the parties an opportunity to move to re-open the case if prudent or

necessary.  *See Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("The

effect of an administrative closure is no different from a simple stay, except that it affects the

count of active cases pending on the court's docket; i.e., administratively closed cases are not

counted as active" .  . . .This case still exists on the docket of the district court and may be

reopened upon request of the parties or on the court's own motion. That situation is the functional

equivalent of a stay, not a dismissal, and is thus not an appealable order under the FAA.").

## III.    CONCLUSION

For these reasons, Waitr's Motion to Compel Arbitration and Dismiss Complaint [Doc.

No. 7] is **GRANTED IN PART and DENIED IN PART**.  To the extent that Waitr moves to

compel arbitration of Sewell's claims on the basis of the April 13, 2017 offer letter, the motion is

**DENIED**.  To the extent that Waitr moves to compel arbitration of Sewell's claims on the basis

of the November 16, 2018 Agreement to Arbitrate Claims, the motion is **GRANTED**.  To the

extent that Waitr moves for dismissal of those claims with prejudice, the motion is **DENIED**.

The Clerk of Court will be **ORDERED** to administratively terminate this action in his records,

without prejudice to the right of the parties to reopen the proceedings.  All pending deadlines and

motions will be terminated, to be re-urged by counsel when the time is right.  This closure shall

not be considered a dismissal of this matter, and should further proceedings in it become

necessary or desirable, any party may initiate it in the same manner as if this portion of the

Court's Judgment had not been entered.

Monroe, Louisiana, this 13th day of January, 2020.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE